# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 1:17-cv-22237-JLK

MAZHARUL ISLAM,

    Plaintiff,

v.

JOHN F. KELLEY, et al.,

    Defendants.

_____/

## ORDER AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff Mazharul Islam's Objections (DE 29) to Magistrate Judge Jacqueline Becerra's May 16, 2019 Report and Recommendation (DE 28), which recommends that the Court grant Defendants' Motion for Summary Judgment (DE 19) and deny Plaintiff's Cross Motion for Summary Judgment (DE 23).

## I. BACKGROUND

In 2013, an immigration judge granted Plaintiff asylum in the United States based upon his fear of political persecution in his native country of Bangladesh. *See* R & R at 3, DE 28. Just over a year later, Plaintiff filed an application with the U.S. Citizenship and Immigration Service (the "USCIS" or the "agency") to adjust his immigration status to "lawful permanent resident." *Id.* The agency denied Plaintiff's application, citing his involvement with the Bangladesh Nationalist Party ("BNP"), which the agency found to be a "terrorist organization" as defined by the Immigration and Nationality Act. *See id.*

at 3–6; 8 U.S.C. § 1182(a)(3)(B) (barring any alien who is a "member of a terrorist organization" from being admitted to the United States, or, in the case of an application to adjust status pursuant to § 1159(b), from being eligible for such adjustment). Plaintiff now brings this action challenging the USCIS's decision and seeking judicial review under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.

Plaintiff's Amended Complaint raises three challenges to the USCIS's decision. First, Plaintiff claims the agency is collaterally estopped from denying his application under the so-called "terrorism bar," arguing that the immigration judge already decided this issue in Plaintiff's favor during his earlier asylum proceeding. *See* Am. Compl. 2–4, DE 12. Second, Plaintiff claims the agency's decision is "arbitrary and capricious" under the APA because there was no showing that the BNP itself authorized any acts of violence by individual members of the party. *Id.* at 4–5. Third, Plaintiff claims the agency's decision should be set aside because the definition of "terrorist organization" is unconstitutionally vague and overbroad. *Id.* at 6–7.

On May 16, 2019, the Magistrate Judge entered her Report and Recommendation on the parties' cross-motions for summary judgment. *See* DE 28. As to collateral estoppel, the Magistrate Judge found that the agency was not barred from denying Plaintiff's adjustment application, because the "terrorist organization" issue was not "actually litigated" in the asylum proceeding. *Id.* at 14. Specifically, the Magistrate Judge notes that there is "no evidence that either party raised or litigated the applicability of the terrorism bar at the asylum hearing," and "the parties did not raise the issue of Islam's inadmissibility in their briefs or closing arguments to the Immigration Judge."

2

*Id.* The Magistrate Judge also found that the agency's decision was not "arbitrary and capricious" because the agency "explicitly addressed the fact that BNP's leadership has at least tacitly authorized violence by its members." *Id.* at 20–21. Finally, the Magistrate Judge rejected Plaintiff's constitutional challenges. *Id.* at 23–25.

Plaintiff then timely filed objections to the Report and Recommendation. *See* DE 29. Plaintiff argues that the Magistrate Judge erred in finding that the terrorism-bar was not "actually litigated" in the asylum proceeding. *Id.* at 4. Citing the Fifth Circuit's decision in *Amrollah v. Napolitano*, 710 F.3d 568 (5th Cir. 2013), Plaintiff argues that the issue was indeed "raised, examined and litigated early on in the asylum proceedings," although he concedes it was only "lightly" litigated. *See id.* at 6. He also objects to the Magistrate Judge's finding that the agency's decision was not "arbitrary and capricious," claiming that mere "tacit" authorization of violence is insufficient, and "[t]here is no evidence in the record, anywhere, that any BNP leader actually authorized terrorist activity." *See id.* at 6–8. Finally, Plaintiff claims the Magistrate Judge erred in finding that the "terrorist organization" bar is not unconstitutionally vague or overbroad and that the Magistrate Judge failed to consider the relevant statutory provisions. *Id.* at 9–12.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "However, even in the context of summary judgment, an agency action is entitled to great deference." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996).

3

Under the APA, agency actions, findings, and conclusions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). The standard is "exceedingly deferential." *Defenders of Wildlife v. U.S. Dep't of Navy*, 733 F.3d 1106, 1115 (11th Cir. 2013). "The court's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Id.* (internal quotation marks omitted). In making this determination, the court's review is based strictly on the administrative record "that was before the agency at the time of its decision." *See Salmeron-Salmeron v. Spivey*, No. 17-15152, 2019 WL 2461713, at *2 (11th Cir. 2019). In that sense, the district court in APA cases "sits as an appellate tribunal," and the "'entire case' on review is a question of law." *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

### III. DISCUSSION

#### A. Collateral Estoppel Does Not Bar The Agency's Decision Because The Terrorism Bar Was Not "Actually Litigated" In The Asylum Proceeding

The Magistrate Judge properly rejected Plaintiff's collateral estoppel argument. Collateral estoppel only bars the re-litigation of issues that were "actually litigated and determined" in a prior suit. *See B & B Hardward, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293, 1303 (2015) (quoting Restatement (Second) of Judgments § 27 (1980)); *see also Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1251 (11th Cir. 2014). By contrast, collateral estoppel generally does not apply to issues that were uncontested in an earlier proceeding. *See Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1179 (11th Cir.

4

2013), *overruled on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017) (finding collateral estoppel inapplicable because prior decision "was not based on a factfinder's determination of causation after an adversarial proceeding but rather on a set of joint stipulations").

The Magistrate Judge correctly ruled that the terrorism-bar issue was not "actually litigated" in the earlier asylum proceeding. Indeed, Plaintiff's Objections concede that the USCIS did not "actively" or "verbally contest" this issue in the asylum proceeding, and that the issue was only "lightly" litigated there. *See* DE 29 at 5–6. This alone forecloses any argument that the issue was "actually litigated" for collateral estoppel purposes. Moreover, there was no evidence or argument presented at the asylum hearing regarding whether the BNP was a terrorist organization, and the immigration judge's one-page order granting asylum "contains no mention of the terrorism inadmissibility bar." *See* R & R at 3. While Plaintiff points to portions of the administrative record where he claims the terrorism-bar was "raised, explored, and litigated," these record citations do not in fact mention the terrorism-bar or discuss whether the BNP qualifies as a "terrorist organization." *See* DE 29 at 5.

The Court also agrees with the Magistrate Judge that Plaintiff's reliance on *Amrollah* is misplaced. In stark contrast to Plaintiff's asylum proceeding, in *Amrollah*, "[t]he government cross-examined [the plaintiff] extensively about his support of the mujahedeen movement and MeK during the asylum proceeding," and the immigration judge specifically found that the plaintiff "did not commit any violent act" that would render him ineligible for asylum. *See Amrollah*, 710 F.3d at 570–71. Thus, in that case,

5

the terrorism-bar issue *was* actually litigated and decided, which justified barring the government from later denying the plaintiff's application to adjust status. Here, the administrative record shows that the "actually litigated" requirement was not satisfied during the asylum proceeding, and therefore the agency's decision is not barred by collateral estoppel.[1]

## B. The Agency's Decision Is Neither "Arbitrary And Capricious" Nor "Unsupported By Substantial Evidence"

The Court is also unpersuaded by Plaintiff's claim that the agency's decision is "arbitrary and capricious" or "unsupported by substantial evidence." Plaintiff cannot credibly claim that "[t]here is no legal authority or precedent for permitting mere 'tacit' authorization of violent acts to amount to terrorist activity under the statute." *See* DE 29 at 7. That argument is refuted by case law cited in Plaintiff's own objections, which hold that "authorization *may be reasonably inferred* from, among other things, the fact that most of an organization's members commit terrorist activity or from a failure of a group's leadership to condemn or curtail its members' terrorist acts." *See Uddin v. Attorney Gen. United States*, 870 F.3d 282, 292 (3d Cir. 2017) (emphasis added).

Plaintiff also argues there is "no evidence of any authorization by the BNP or its leaders of any acts of violence or terrorism." *See* DE 29 at 6. After *de novo* review, the Court disagrees with Plaintiff's reading of the administrative record. Indeed, the agency

---

[1] While Plaintiff also objects to the Magistrate Judge's finding that the issues were not "identical" in the asylum proceeding and adjustment-of-status proceeding, because the "actually litigated" element would not be satisfied regardless, the Court need not address the remaining elements of collateral estoppel, including the "identical issues" element.

6

cited substantial evidence supporting its finding that BNP leaders either authorized, participated in, or threatened acts of violence by individual BNP members.[2] Thus, under the deferential APA standard of review, the Court finds that the agency's decision is biased on substantial evidence.

C.  The "Terrorist Organization" Definition Is Not Unconstitutionally Vague Or Overbroad

A statute is "impermissibly vague" only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). To succeed on this claim, a plaintiff "must demonstrate that the law is unconstitutionally vague in all of its applications." *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1176 (11th Cir. 2018) (internal quotation marks omitted).

---

[2] *See, e.g.*, DE 18-2 at 27 (quoting Feb. 23, 2013 U.S. Department of State report stating: "On March 11, 2013, police raided the opposition BNP's central office and arrested more than 150 party officials during a BNP rally. *Police claimed they found Molotov cocktails and bomb-making materials inside the BNP office*," though the BNP denied the police's claim.) (emphasis added); *id.* at 28 (citing Feb. 2000 report by Bangladesh Committee to Protect Journalists noting that "[l]ocal BNP *activists and leaders have also been linked to allegations of intimidation and violence directed against journalists critical of the party and its leaders*") (emphasis added); *id.* at 29 ("Although BNP national leadership has consistently denied intentional involvement in acts of intimidation or violence, *witnesses have reported receiving direct threats from local Party leaders.*") (emphasis added); *id.* at 27 (quoting June 1996 Human Rights Watch report stating: "[N]either the BNP nor the Awami League has taken affirmative steps to ensure that their supporters and party cadres desist from the kind of violence that characterized their earlier political feuding. . . ."); *id.* (quoting June 1996 Human Rights Watch report and noting: "Beyond merely tacitly condoning the violence, the major political parties, including the BNP, '*organize and support activist and militant youth and student wings.*'") (emphasis added).

7

Here, the statute states that any alien who "is a member of a terrorist organization" is "ineligible to be admitted to the United States." 8 U.S.C. § 1182(a)(3)(B)(i)(VI). In turn, "terrorist organization" is defined as a "group of two or more individuals, whether organized or not, which engages in . . . [terrorist activities]." *Id.* § 1182(a)(3)(B)(vi)(III). And "terrorist activities" include, among other things, the use of any "explosive, firearm, or other weapon or dangerous device . . . with intent to endanger . . . the safety of one or more individuals or to cause substantial damage to property," or to "threat[en], attempt, or conspir[e]" to do so. *Id.* § 1182(a)(3)(B)(iii)(V).

A "person of ordinary intelligence" would understand that being a member of a group that engages in violence and intimidation against other political parties, police, and journalists—including through the use of Molotov cocktails and other explosives—and that does so with authorization from the group's leadership, qualifies as being a "member of a terrorist organization" under § 1182(a)(3)(B). Similarly, the statute is not "so standardless that it authorizes or encourages seriously discriminatory enforcement" in all cases, and the Court agrees with the Magistrate Judge that the terrorism-bar was not "overbroadly applied" in this case.

## IV. CONCLUSION

After *de novo* review, the Court agrees with the Magistrate Judge's well-reasoned recommendation that Defendants are entitled to summary judgment on Plaintiff's claims. Accordingly, it is **ORDERED, ADJUDGED, and DECREED** as follows:

1. Magistrate Judge Becerra's May 16, 2019 Report and Recommendation **(DE 28)** be, and the same hereby is, **AFFIRMED and ADOPTED**;

2. Defendants' Motion for Summary Judgment filed March 23, 2018 **(DE 19)** be, and the same hereby is, **GRANTED**; and

3. Plaintiff's Cross Motion for Summary Judgment filed June 4, 2018 **(DE 23)** be, and the same hereby is, **DENIED**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 28th day of June, 2019.

*/s/ James Lawrence King*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**cc:** **Magistrate Judge Jacqueline Becerra**
**All counsel of record**